IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| LILLIE M. MIDDLEBROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:10-cv-1306 (AJT/JFA) |
| | ) | |
| GODWIN CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

In this action, plaintiff Lillie M. Middlebrooks (plaintiff or "Ms. Middlebrooks"),

appearing *pro se*, claims that following the termination of her employment with defendant

Godwin Corporation ("Godwin"), Godwin did not provide her with notice of her rights with

respect to the continuation of her employer-provided group health care coverage, as required

under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA" or the "Act"),

29 U.S.C. §§ 1166(a)(1) and (4).  The Court held a bench trial on January 24, 2012, following

which the Court took the case under advisement and now issues its Findings of Fact and

Conclusions of Law pursuant to Federal Rule of Civil Procedure 52.

In her forty-four count Amended Complaint, Ms. Middlebrooks claims that Godwin

failed to provide the required COBRA notices when she was hired, in violation of 29 U.S.C. §

1166(a)(1), and also that Godwin provided inadequate COBRA notices when she was

discharged, in violation of 29 U.S.C. § 1166(a)(4).  On this basis, she requests under 29 U.S.C. §

1

1132(c)(1)(A) that the Court award to her the maximum statutory penalty of $110 per day[1] for each omission, pre-judgment interest, costs, expenses, and reasonable attorney's fees, and such other relief as this Court may deem just and proper.

Godwin disputes that Ms. Middlebrooks is entitled to any relief. As for its obligation to provide a COBRA notice at the commencement of her employment, Godwin concedes that such a notice was not provided, but that Godwin otherwise satisfied that requirement under the applicable regulations when it issued to her, within 90 days of her enrollment into Godwin's health plan, a COBRA notice in connection with her termination. *See* 29 C.F.R. § 2590.606-1(b)(3). As to its obligation to provide Ms. Middlebrooks a post-termination COBRA notice, Godwin claims that Ms. Middlebrooks was discharged for reasons that constitute "gross misconduct," and for that reason her termination did not constitute a "qualifying event" that triggered an obligation to provide the post-termination notice otherwise required. *See* 29 U.S.C. § 1163(2). Alternatively, Godwin contends that even if it were obligated to send Ms. Middlebrooks a post-termination COBRA notice, it did send such a notice; however, Godwin also admits that the COBRA notice it sent did not contain all of the information required under the applicable regulations. Nevertheless, Godwin claims that it attempted in good faith to comply with COBRA, the COBRA notice it did send contained all of the material information that Ms. Middlebrooks needed to make an informed judgment about whether and how to continue her employer-provided coverage, and Ms. Middlebrooks has not demonstrated any prejudice because of the omitted information. For these reasons, among others, Godwin requests

---

[1] A Department of Labor regulation has increased to $110 the $100 penalty stated in 29 U.S.C. § 1132(c)(1). *See* 29 C.F.R. § 2575.502c-1.

that the Court exercise its discretion under 29 U.S.C. § 1132(c)(1)(A) and impose no penalties for the defects in its notice.

Based on the Findings of Fact and the Conclusions of Law set forth herein, the Court finds and concludes that (1) Godwin satisfied its obligation to provide a COBRA notice at the beginning of Ms. Middlebrooks's employment when it issued its post-termination COBRA notice dated November 18, 2008, its admitted deficiencies notwithstanding; (2) Ms. Middlebrooks established that her termination was for reasons other than gross misconduct and Godwin was therefore required to provide to her a compliant post-termination COBRA notice; (3) Godwin failed to provide a fully compliant notice to Ms. Middlebrooks; and (4) an award of $500 to Ms. Middlebrooks is appropriate.

### I.   Findings of Fact

1.   Godwin Corporation is a company with 20 or more employees that provides, among other services, professional healthcare staffing to the federal government.

2.   At all material times herein, Godwin hired registered nurses and other support persons for a program entitled "Healthy Start," administered by the District of Columbia, which provided in-home visits to pregnant and postpartum women with health issues during and after pregnancy (the "Healthy Start Program").

3.   On or around July 29, 2008, Godwin offered and Ms. Middlebrooks accepted a full-time position to work for Godwin as a registered nurse in connection with the Healthy Start Program, beginning on August 1, 2008.  Ms. Middlebrooks was in fact assigned to the Healthy Start Program; and her duties included the supervision of two assistants, known as Family Support Workers, also employed by Godwin, who provided support services as part of a three-person team led by Ms. Middlebrooks.

3

4.  At all material times herein, Godwin served as the plan administrator for a group health plan, number UN85, titled CareFirst Blue Choice HMO, and also for a group dental health plan, number 665460, titled Humana Dental Insurance.

5.  On September 1, 2008, 30 days after her employment began, Ms. Middlebrooks was enrolled in Godwin's employer-sponsored health plans. She did not receive a COBRA notice when she started work or when her coverage became effective.

6.  Ms. Middlebrooks's supervisor at Godwin was Janice Williams ("Ms. Williams") and her supervisor at the Healthy Start Program was Karen Watts ("Ms. Watts"), who was employed by the District of Columbia.

7.  As part of her initial orientation for the Healthy Start Program, Ms. Middlebrooks was apprised of the program's protocols. Specifically, Ms. Middlebrooks was told that if she was unable to make contact with a potential client of the Healthy Start Program after three attempts, she was to remove that client from her client list and not make further attempts.

8.  From the onset of her employment, Ms. Middlebrooks had a difficult working relationship with her team members, prompting meetings with Ms. Watts. After Ms. Middlebrooks expressed her concerns about the three-contact rule, Ms. Watts met with Ms. Middlebrooks to discuss and reiterate the importance of complying with that protocol because if the protocol was not followed, the program's funding could be jeopardized. Nevertheless, Ms. Middlebrooks insisted on continuing to contact potential clients after making three unsuccessful attempts to do so.

9.  On October 30, 2008, Ms. Watts requested, through Ms. Williams, that Godwin remove Ms. Middlebrooks from the Healthy Start Program, which Godwin did that same day, together with terminating her employment with Godwin.

4

10. By letter dated November 18, 2008, captioned "Cobra Letter," a copy of which was admitted as Plaintiff's Exhibit 10, Godwin advised Ms. Middlebrooks of her COBRA rights to continue her group health coverage at her own expense (the "COBRA Notice"). Briefly summarized, the COBRA Notice advised Ms. Middlebrooks that she was no longer eligible to be covered under Godwin's healthcare plan as of October 31, 2008; but that pursuant to COBRA, she had the option to continue her healthcare benefits for both herself and her dependents for up to 18 months by paying the full premium. The COBRA Notice listed the Qualifying Event as "Termination of Employment"; the Event Date as "Oct 30 2008"; the Health Coverage Premium start date as "Nov 1 2008"; and the Total Monthly Premium as "$307.64," which was described as including a 2% service charge. It also advised her that if she elected the COBRA coverage, she would continue to receive coverage until certain events occurred, such as becoming employed and covered under another group health care plan, failing to pay the premiums, or any dependents passing the maximum coverage age. The COBRA notice further advised (incorrectly as will be discussed) that she had until December 1, 2008, about 32 days after her discharge (rather than, as COBRA requires, on a date no less than 60 days from the date of termination), to notify Godwin of her intentions. It also stated incorrectly that the maximum 18-month coverage period would expire on the already-passed date of April 30, 2008, rather than the correct date of April 30, 2010. The letter provided two election spaces, one for electing coverage and one for declining coverage. A facsimile number and a self-addressed, stamped return envelope were also provided. Finally, the COBRA notice provided contact information if she had any questions.

11. Godwin concedes that the following information was not provided in the COBRA Notice issued to Ms. Middlebrooks:

5

- An explanation of the consequences of failing to elect or waiving continuation coverage, relating to Count 9 of the Amended Complaint. *See* 29 C.F.R. § 2590.606-4(b)(4)(vi).

- A description of the qualified beneficiaries' grace periods for payment and the consequences of delayed payment and non-payment, relating to Count 21 of the Amended Complaint. *See* 29 C.F.R. § 2590.606-4(b)(4)(xii).

- An explanation of the importance of keeping the administrator informed of the current addresses of all participants or beneficiaries under the plan who are or may become qualified beneficiaries, relating to Count 27. *See* 29 C.F.R. § 2590.606-4(b)(4)(xiii).

- A notice that the employee has 60 days to make an election to enroll in COBRA, relating to Count 28. *See* 29 U.S.C. § 1165(a)(1).

- The correct date on which the 18-month maximum coverage period would expire, relating to Count 30. *See* 29 U.S.C. § 1162(2)(A)(i); 29 C.F.R. § 2590-606-4(b)(4)(viii).[2]

- The name of the plan under which continuation coverage is available, relating to Count 34. *See* 29 C.F.R. § 2590.606-4(b)(4)(i).

12.     Ms. Middlebrooks made no effort to exercise her COBRA rights following her termination or the receipt of the COBRA notice sent by Godwin. She did not return the COBRA notice or otherwise make an election. She never attempted to contact or to communicate with Godwin about the COBRA notice or her COBRA coverage. She never raised any issues with Godwin about the adequacy of the COBRA Notice until she filed this lawsuit on November, 18 2010, which she served on Godwin on March 15, 2011.

13.     Ms. Middlebrooks has not demonstrated any prejudice as a result of any of the deficiencies in her COBRA Notice. She was generally aware of her COBRA rights, as she had

---

[2] However, in response to Godwin's Motion for Judgment on Partial Findings, the Court held that Godwin complied with the COBRA requirement to notify Ms. Middlebrooks that she was eligible for up to 18 months of coverage, notwithstanding the scrivener's error in listing April 2008 as the cut-off date for the 18-month COBRA coverage period.

exercised them with a previous employer, and in fact was receiving COBRA coverage at the time she was hired by Godwin.  At the time she was employed by Godwin and during the period following her termination, Ms. Middlebrooks did not have a spouse or dependents that would also have been covered had she elected COBRA coverage.  On May 1, 2009, Ms. Middlebrooks started a new job that provided employer-sponsored health coverage.  She also did not establish that she incurred any uninsured medical expenses or had medical care needs after her termination and before she was employed and covered under a new employer's health plan beginning on May 1, 2009.[3]

14.  Based on the applicable legal standard, as discussed *infra*, Ms. Middlebrooks established that she was terminated for reasons other than gross misconduct.

15.  At all material times herein, Godwin acted in good faith in connection with satisfying its COBRA obligations to Ms. Middlebrooks.

## II. Conclusions of Law

1.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

2.  Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2).

3.  At all material times herein, Godwin was subject to the requirements of COBRA.

4.  Ms. Middlebrooks's termination was a "qualifying event" that triggered her entitlement to a post-termination COBRA notice.

---

[3] In her Amended Complaint, Ms. Middlebrooks does allege that she experienced "financial injury, humiliation, emotional distress, weight loss, hair loss, mental anguish and suffering"; and at trial, Ms. Middlebrooks stated that she did have medical care needs and expenses. Nevertheless, she refused to provide any information concerning these claims during discovery, including refusing to answer any questions about those contentions at her deposition, which ended when she walked out after refusing to answer certain questions. Based on these events, the Court issued a pretrial order precluding her from making such claims at trial. *See* Order dated January 13, 2012 [Doc. No. 122].

7

In order for Ms. Middlebrooks's termination to constitute a "qualifying event," she was required to establish that her termination was for reasons other than "gross misconduct." 29 U.S.C. § 1163(2).  There is no definition of what constitutes "gross misconduct" in either the COBRA statute or the applicable regulations, and courts have diverged significantly as to what rises to that level.  Some courts have provided a standard by which conduct can be judged. *See Zickafoose v. UB Servs., Inc.*, 23 F. Supp. 2d 652, 655 (S.D.W. Va. 1998) ("[C]onduct is gross misconduct if it is so outrageous that it shocks the conscience."); *Collins v. Aggreko, Inc.*, 884 F. Supp. 450, 454 (D. Utah 1995) ("Gross misconduct may be intentional, wanton, willful, deliberate, reckless or in deliberate indifference to an employer's interest.  It is misconduct beyond mere minor breaches of employee standards, but conduct that would be considered gross in nature."); *Paris v. F. Korbel & Bros., Inc.*, 751 F. Supp. 834, 838 (N.D. Cal. 1990) (defining gross misconduct as "conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such a degree or recurrence as to manifest equal culpability, wrongful intent, or evil design, or to show an intentional and substantial disregard of the employer's interests or the employee[']s duties and obligations to his employer.").  Other courts merely evaluate the conduct at issue by analogizing it to, or distinguishing it from, conduct in other cases. *See, e.g., Moore v. Williams College*, 702 F. Supp. 2d 19, 24 (D. Mass 2010); *Nero v. Univ. Hosp. Mgmt. Servs. Org.*, 1:04-CV-1833, 2006 WL 2933957, at *4 (N.D. Ohio October 12, 2006).

Here, the evidence established that Ms. Middlebrooks was discharged, at the request of the District of Columbia, because she disobeyed a directive that she not contact further certain persons who had signed up for the services of Ms. Middlebrooks's team, but who could not be

contacted after three attempts.  At the time of her discharge, she was not charged with gross

misconduct, even though Godwin had a gross misconduct policy, and there was no claim by

Godwin at the time of her discharge that it was gross misconduct.  While the lack of evidence in

that regard does not preclude Godwin from now claiming that Ms. Middlebrooks failed to

establish at trial that her discharge was for reasons other than gross misconduct, it is probative of

how the conduct was seen at the time by Godwin.  Moreover, there is no evidence of fraud, theft,

deceit, misrepresentation, violence or intimidation, or other criminal or quasi-criminal conduct

by Ms. Middlebrooks.  Nor was there evidence of any prolonged or repeated periods of

insubordination or any financial harm to the interests of either Godwin or the District of

Columbia.  At most, there was evidence that Ms. Middlebrooks was difficult to work with and

that she was insistent on providing services to people who no longer qualified for services.  Her

conduct, as a whole, is easily distinguishable from those cases where gross misconduct was

found.  *See Williams College*, 702 F. Supp. 2d at 24 (summarizing instances where courts have

found gross misconduct).  In any event, and without formulating a precise definition of gross

misconduct, the Court concludes that "gross misconduct" requires conduct substantially beyond

mere negligence, carelessness, or obstinacy; and that Ms. Middlebrooks's conduct lacked

sufficient indicia of willfulness, wantonness, outrageousness, recklessness, intention or

deliberate indifference to constitute gross misconduct.[4]  For these reasons, the Court finds and

---

[4] Godwin asks the Court to adopt the rather broad standard set forth in *Bryant v. Food Lion Inc.*,
where the court viewed gross conduct as "carelessness or negligence of such a degree or
recurrence as . . . to show an intentional and substantial disregard of the employer's interests or
the employee[']s duties and obligations to his employer." 100 F. Supp. 2d 346, 376 (D.S.C.
2000).  To the extent that Ms. Middlebrooks's conduct would be deemed gross misconduct under
the *Bryant* standard, the Court finds that standard too encompassing for the purposes of
determining whether terminated workers are excluded from COBRA protections, particularly in
light of the legislative objectives and purpose behind COBRA.

concludes that Ms. Middlebrooks established a qualifying event that entitled her to receive

COBRA Notices following her discharge from Godwin on October 30, 2008.

> 5. Ms. Middlebrooks was entitled to receive both a commencement notice and a post-termination notice.

COBRA requires a group health plan to provide an employee notice of his or her rights

when (1) coverage under a group health plan commences ("commencement notices") and (2) a

"qualifying event" occurs ("post-termination notices"). 29 U.S.C. §§ 1166(a)(1) and (4).  An

employer has 90 days from the time the health plan begins to provide the commencement notices

in satisfaction of § 1166(a)(1). 29 C.F.R. § 2590.606-1(b)(1)(i).

> 6. Godwin satisfied its obligation to provide a commencement notice.

The applicable regulations provide that if a qualifying event occurs before the end of the

90-day period within which a commencement notice must be given, the notice provided pursuant

to that qualifying event will simultaneously satisfy the requirement to provide commencement

notices. 29 C.F.R. § 2590-606-1(b)(3).  In other words, if an employee is discharged within 90

days of her enrollment in a health plan, the post-termination notice also satisfies the requirement

to provide a commencement notice.[5]

The Court first considers Godwin's position that it was relieved of the duty to provide a

commencement notice because it provided a post-termination notice.  Here, Godwin provided a

---

[5] In its Order dated July 14, 2011 [Doc. No. 46], the Court denied Godwin's Motion to Dismiss with respect to the failure to issue a commencement notice.  In making that ruling, based solely on the allegations of the Complaint, accepted as true for the purposes of that motion, the Court did not consider, as it now does following a trial on the merits, whether the plaintiff in fact received a COBRA termination notice, something the plaintiff appeared to have denied in her Amended Complaint.  In ruling on that motion, the Court also did not address whether, because of its deficiencies, the termination notice satisfied the commencement notice requirement.  With a more complete record, the Court is now in a position to make such rulings.

post-termination notice within 90 days of Ms. Middlebrooks's enrollment in Godwin's health plan. The only issue is whether the admitted deficiencies in that post-termination notice somehow preclude that notice from also satisfying the commencement notice requirement.

The applicable regulations contemplate that when a qualifying event occurs within 90 days of an employee's enrollment in a company's health plan, that person will in fact receive only one notice. The Court therefore concludes that the post-termination notice satisfied the commencement notice requirement; and that if the post-termination notice omitted any required information, Godwin still can be charged with only one violation, rather than two separate violations.[6] For these reasons, the Court concludes that there is no liability based on the commencement notice requirements.

7. Godwin's post-termination notice was deficient.

As stated *supra*, Godwin concedes that its post-termination COBRA Notice was deficient in the following ways:

- Godwin failed to provide an explanation of the consequences of failing to elect or waiving continuation coverage. *See* 29 C.F.R. § 2590.606-4(b)(4)(vi).

- Godwin failed to provide a description of the qualified beneficiaries' grace periods for payment and the consequences of delayed payment and non-payment. *See* 29 C.F.R. § 2590.606-4(b)(4)(xii).

- Godwin failed to provide an explanation of the importance of keeping the administrator informed of the current addresses of all participants or beneficiaries under the plan who are or may become qualified beneficiaries. *See* 29 C.F.R. § 2590.606-4(b)(4)(xiii).

- Godwin failed to provide notice that the election period was open for 60 days. *See* 29 U.S.C. § 1165(a)(1).

---

[6] The Court is unaware of any case that has dealt with this discrete issue.

11

- The date on which the maximum period of COBRA coverage would expire was incorrectly stated. *See* 29 U.S.C. § 1162(2)(A)(i); 29 C.F.R. § 2590-606-4(b)(4)(viii).

- Godwin failed to provide the name of the plan under which continuation coverage is available. *See* 29 C.F.R. § 2590.606-4(b)(4)(i).

The Court has also reviewed Ms. Middlebrooks's claims relating to other alleged deficiencies in her post-termination notice and concludes that there are no other deficiencies pertaining to the post-termination notice. In this regard, Ms. Middlebrooks was not entitled, as she alleged, to a COBRA Notice as to her dental plan[7] or to have included in her COBRA Notice information required under the American Recover and Reinvestment Act of 2009, which was enacted on February 17, 2009, several months after her termination.[8]

8. A failure to provide more than one piece of required information in the COBRA Notice only supports a single penalty.

This Court has previously ruled that "any particular failure to provide an adequate [commencement notice] or [post-termination notice] will only support a single penalty pursuant to 29 U.S.C. § 1132(c)(1), regardless of the number of counts in which that failure is alleged."

---

[7] COBRA requires coverage and notices for a "group health plan." 29 U.S.C. § 1161(a). "Group health plan" is defined as "an employee welfare benefit plan providing medical care (as defined in section 213(d) of Title 26)." 29 U.S.C. § 1167(a). "Medical care" is defined as "amounts paid . . . for the diagnosis cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body." 26 U.S.C. § 213(d)(1)(A). This broad definition appears to include dental insurance; indeed, § 213 is titled "Medical, dental, etc., expenses." However, under the applicable regulations, COBRA's requirements do not apply to "limited-scope dental benefits" where those benefits are part of a "separate policy," among other situations. *See* 29 C.F.R. § 2590.732(c)(3)(iii)(A) ("Limited-scope dental benefits" are defined as "benefits substantially all of which are for treatment of the mouth."). The Amended Complaint alleges a dental plan that appears to be a separate plan with a separate plan number; and Ms. Middlebrooks presented no evidence that would subject Godwin's dental plan to the COBRA notice requirements. The Court will therefore dismiss her claims as they relate to Godwin's dental plan.

[8] *See* American Recovery and Reinvestment Act of 2009, Pub. L. No. 111–5, 123 Stat. 115 (2009).

[Doc. No. 46, p. 4]. *See* 29 U.S.C. § 1132(c)(1) (any administrator "who fails to meet the requirements of [29 U.S.C. §§ 1166(a)(1) or (4)] with respect to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of $100 a day from the date of *such failure* . . . ."). Here, Ms. Middlebrooks alleges in 44 separate counts various pieces of information that she contends COBRA requires and Godwin failed to provide. Nevertheless, because all the alleged (and actual) deficiencies relate to only one required notice, the Court will consider the appropriate amount of only a single penalty with respect to that one notice.

      9. A penalty in the amount of $500 is appropriate.

      The Act gives this Court the discretion to determine the amount, if any, that a violation warrants. 29 U.S.C. § 1132(c)(1). In that regard, the purpose of penalties under § 1132(c)(1) is "not to compensate the participants for injuries, but to punish non-compliance with ERISA." *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 659 (4th Cir. 1996) (citing *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1494 (11th Cir. 1993)). While prejudice to a party is not a prerequisite to establishing liability, "prejudice is a factor a district court may consider in deciding whether to impose a penalty." *Id.* (citing *Moothart v. Bell*, 21 F.3d 1499, 1506 (10th Cir. 1994)). "The district court may also consider whether the administrator acted in bad faith." *Id.* (citing *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 588 (1st Cir. 1993)).

      In considering whether and to what extent to award a penalty in this case, the Court notes that this case differs fundamentally from those cases where awards have been made based on a steadfast refusal to provide required documents or information. *See Faircloth*, 91 F.3d at 659 (affirming an award to each plaintiff of $2,500 where the defendant failed to provide requested documents for nearly two years, even though defendant did not act in bad faith); *Brooks v.*

*Metrica, Inc.*, 1 F. Supp. 2d 559, 569 (E.D. Va. 1998) (awarding $80 a day for a total $14,320 based on employer's outright refusal to comply with the employee's request for 179 days and because (1) the employer's "conduct fell far short of what must be expected of a plan administrator and its agents in responding to participants' questions and complaints"; (2) the employer's unreasonable litigation conduct in refusing to settle the matter; and (3) the "cavalier attitude" the employer displayed in response to the requests, although it did not rise to the level of bad faith). *See also Jackson v. Coyne & Delany Co.*, No. 3:04-CV-00005, 2004 WL 1381157, *3 (W.D. Va. June 18, 2004) (awarding statutory penalties of $25 per day, a total of $2,325, and attorney's fees of $5,058.03 for an administrator's failure to comply with a request for documents). Here, Godwin never ignored a request for documents or information; and the notice deficiencies were not brought to Godwin's attention until Ms. Middlebrooks sued Godwin more than two years after it had sent the COBRA Notice to her. It is clear that Godwin is not a company that was attempting to avoid its COBRA obligations; and the Court notes that, unlike the defendant in *Brooks*, Godwin did not engage in any "unreasonable litigation conduct." In fact, Godwin made good faith efforts to settle the case before trial.

Further, there is no evidence that Ms. Middlebrooks experienced any actual harm as a result of Godwin's inadequate notices. She had elected COBRA coverage after leaving previous employment, and was aware of COBRA's protections for the unemployed. She also started a new job on May 1, 2009, five months after her discharge, and received health insurance in connection with that job. The Court has considered Ms. Middlebrooks's claim that she was misled by the incorrect deadline of December 1, 2008 to elect coverage; but while she did not receive notice of her right to elect coverage within a 60-day election period, she never inquired about her coverage and, again, demonstrated no prejudice. In short, there is no employer bad

14

faith or employee prejudice, and in similar circumstances some courts have declined to impose penalties altogether. *See Bouche v. Williams*, 13 F. Supp. 2d 84, 105 (D. Me. 1998); *Burgess v. Adams Tool & Eng'g, Inc.*, 908 F. Supp. 473, 478-79 (W.D. Mich. 1995).

The Court has considered all the facts and circumstances pertaining to the proven deficiencies in the COBRA Notice. While many considerations weigh in Godwin's favor with respect to whether or not a penalty should be imposed, the Court finds significant that the deficient scope of information provided in the COBRA Notice was based on Godwin's standard COBRA notice at the time (although that standard notice has been substantially revised since);[9] and the multiple deficiencies in the COBRA Notice, especially the incorrect deadline for electing COBRA coverage, did have the potential to harm and mislead terminated employees, although there is no evidence that it did. Given that the purpose of the penalty is "to punish non-compliance with ERISA," the Court finds that a penalty is appropriately assessed against Godwin and the Court will award Ms. Middlebrooks $500, which the Court concludes is sufficient to address Godwin's non-compliance.

### III.    Conclusion

The Court finds that Ms. Middlebrooks was discharged for reasons other than gross misconduct and was therefore entitled to a post-termination notice. Godwin's post termination notice was deficient, and the Court, after considering all the facts and circumstances of this case, awards $500 to Ms. Middlebrooks.

---

[9] Godwin's revised standard COBRA notice was admitted into evidence at trial and, without ruling on the sufficiency of that notice, it appears to provide the type of required information omitted from Ms. Middlebrooks's COBRA Notice. Although Godwin adopted its revised notice in late 2010, there is no evidence that Godwin was prompted to revise its notice because of or after it learned of this litigation.

15

The Court will issue an appropriate order.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
February 7, 2012

16